## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

**JEFFERY T. DAVIS,**
            **Plaintiff,**

            **vs.**                                          **05-1238**

**DAVID OWENS, et al.,**
**Defendants.**

### MEMORANDUM OPINION AND ORDER

        Before the court is the defendant, City of Bloomington's Motion for Summary Judgment
[255] and the plaintiff's response [258] and the defendant's reply [260].  The defendant brings its
summary judgment motion pursuant to Fed.R.Civ.P. 56 and Local Rule 7.1.

### Standard

        Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to a judgment as a
matter of law."  Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001),
*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co.,
Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).  In determining
whether factual issues exist, the court must view all the evidence in the light most favorable to
the non-moving party.  *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).
Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that
there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at
325.  If such a showing is made, the burden shifts to the non-movant to "set forth specific facts
showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837.
A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible
evidence that will support its position.  *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.
1994).  Credibility questions "defeat summary judgment only '[w]here an issue as to a material
fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate
their credibility.'"  *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963
Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

        Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate
time for discovery and upon motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's case, and on which that party will
bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.  "Where the record taken as a whole
could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue
for trial."  *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).  A "metaphysical

doubt" will not suffice.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Disputed facts are material only if they might affect the outcome of the suit.  *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

Jeffery T. Davis filed suit against the City of Bloomington after being arrested by Officers
Richard Hirsch, Clayton Arnold, and David Ziemer.  Davis was arrested by the officers after he had a physical altercation with Jodie Allen.  In its March 30, 2007 order [253[, the court found that these officers did not use excessive force in arresting Davis and that the officers were not deliberately indifferent to Davis' medical needs.  The City of Bloomington asserts that it is therefore entitled to summary judgment because no violation of Davis' constitutional rights occurred, and because there is no evidence that it adopted or followed any unconstitutional custom or policy.

In response, the plaintiff claims there was a constitutional violation by the Bloomington officers, despite the court's previous ruling to the contrary.  Second, he asserts that the City of Bloomington had a "ministerial" obligation to provide him with medical care.  Third, he claims that the City of Bloomington violated his rights by having a custom or policy which allowed police officers to make medical judgments.  Finally, he asserts that the City of Bloomington is liable as a supervisor.

## Statement of Undisputed Material Facts[1]

1.      Davis has had a number of felony convictions in McLean County for aggravated battery and a number of retail theft cases. He was also convicted of possession of a stolen vehicle in Cook County.  He has been incarcerated with the Illinois Department of Corrections several times. First Davis dep. (Exhibit L) at 9-10.[2]  Officer Ziemer had at least two prior

---

[1]The City of Bloomington adopted and incorporated the Statement of Undisputed Facts in Defendants Hirsch, Arnold and Ziemer's Motion for Summary Judgment [195].

[2][1]Exhibits A and C –K refer to the exhibits to Defendants' Response to Davis' Motion for Summary Judgment (#170) as follows:
>    A. Affidavit of Hirsch          C. Affidavit of Ziemer        D. First Davis deposition
>    E. Second Davis deposition     F. Copenhaver deposition  G. Photo of "fat lip"
>    H. Booking photo - right        I. Booking photo - left J. Dr. Escobar deposition
>    K. Naour deposition
>    Exh. B (Arnold Affidavit) and exhibit following K are attached to defts' motion [195].

encounters with Davis involving Davis being drunk in public. Exhibit O (Second Affidavit of Officer Arnold) at ¶2. Officer Hirsch had at least one prior encounter with Davis in which Davis resisted after being taken into custody on an outstanding warrant. Davis claimed that he had a broken back and leg, but no injuries were found when he was seen in the emergency room. Exhibit P (Second Affidavit of Officer Hirsch) at ¶2.

2.  Prior to March 7, 2004, Davis lived with Debra Lindsey at 815 E. Jefferson in Bloomington. First Davis dep. at 5. Davis got into an argument with Lindsey around March 7, 2004 and was forced to move out of the apartment. First Davis dep. at 17.

3.  On March 7, 2004, Davis went to Jodie Allen's apartment on East Market in Bloomington.  First Davis dep. at 17-18, 20-21. They talked and decided that Davis would stay with her.  He moved his stuff to her apartment. First Davis dep. at 18. They were former paramours.  First Davis dep. at 18.

4.  On March 8, they were at the apartment with Brandy Stein. First Davis dep. at 17-19. Stein was ill and Allen brought her to the apartment to look after her. Allen referred to Stein as her daughter, but Davis knew that this was not true. First Davis dep. at 19-20. Davis confronted Allen and asked what her deceased son would think of her "drinking... and letting her life just go down the drain..." First Davis dep. at 20.  They got into an argument and she hit him in the bottom lip with her hand. First Davis dep. at 20.[3]  It was a "hard hit" that caused his lip and tooth to swell up.  First Davis dep. at 145. Davis pushed her back, causing her to fall backwards, knocking a lamp into the wall and off the table, breaking it.  First Davis dep. at 22, 144-145.  During the altercation, Allen bit Davis on the breast and arm. First Davis dep. at 144-145, 149-151. Davis cannot recall exactly how she managed to bite him on both his arm and chest during their allegedly brief altercation.  First Davis dep. at 150-151.

5.  Davis left, got into a car and drove away. First Davis dep. at 20-21.

6.  At approximately 1:45 a.m. on March 9, 2004, MetCom received a report of an aggravated battery and dispatched Officers Arnold and Hirsch to Jodie Allen's apartment at 407 E. Market St. in Bloomington. Second Affidavit of Arnold at ¶ 4; Second Affidavit of Hirsch at ¶4.  MetCom advised the officers that the victim reported that the suspect, Jeffery Davis, was carrying a gun.  *Id.*

7.  Davis drove to his old apartment on East Market, a couple of blocks away.  When he turned onto Market, he extinguished the headlights on the car. First Davis dep. at 21. Officer Arnold witnessed this maneuver and notified Officer Hirsch by radio.  Second Arnold Aff. at ¶5.  Davis parked in front of the apartment building.  First Davis dep. at 21.

8.  Davis was arrested onMarch 9, 2004 at approximately 2:00 a.m.  First Davis dep. at 17, 33, 35.  Officers Hirsch and Arnold pulled up behind his parked car with their overhead emergency lights on.  They instructed Davis to throw the car keys out the window, get out of the car, and put his hands up.  He complied.  First Davis dep. at 26-27.  Officers

---

[3]The defendants note that the account of the incident given by Brandy Stein and Jodie Allen is markedly different, as reflected in the police reports attached to the officers' affidavits. For purposes of this motion, however, the court accepts Davis' version of the facts.

told him to walk backward toward them and he complied.  First Davis dep. at 28.  Davis claims that he was then picked up and "slammed"on the ground and that his face hit the ground.  First Davis dep. at 29.  The officers yelled at him, "Where is the gun?"  First Davis dep. at 30-31.

9.     After the arrest, Davis' lip was still bleeding from Jodie Allen's punch.  First Davis dep. at 32.  Davis does not recall bleeding from any other injury after his arrest. First Davis dep. at 32.

10.    Davis asked the Officers why they used the force that they did.  The officers explained that they were told that Davis had a gun.  First Davis dep. at 34-35.

11.    The officers involved in the arrest did not observe any injuries warranting medical attention.  Affidavit of Arnold (Exhibit B) at ¶6; Affidavit of Hirsch (Exhibit A) at ¶6, Affidavit of Ziemer (Exhibit C) at ¶6.

12.    Davis admits that he "was not in need of medical attention for the "black eye injury," the "fat lip injury"nor any "minor cuts on the left side of (his) face..."  Plaintiff's Reply to Defendant Phares, Fellner, Kessinger, and Allens Responce (sic) to Plaintiffs Motion for Summary Judgment [175] at 7.  Davis' only claim is for the alleged fractured jaw.

13.    Davis was taken to theMcLean County Jail and booked into the jail.  He was booked in following normal procedures. First Davis dep. at 43-52; Defendants' Appendix of Exhibits in Support of its Response for Summary Judgment ("Phares Exhibits") [161], Exhibit No. 5 (Simpson affidavit) at ¶2-7.

14.    If Davis was in obvious need of emergency medical care, the McLean County Jail would have refused to accept him. The jail would have instructed the arresting officer to take him to the hospital.  Defendants' Appendix of Exhibits in Support of its Response for Summary Judgment ("Phares Exhibits") (#161), Exhibit No. 5 (Simpson affidavit) at ¶¶7; Naour dep. at 43-44, 45-46.

15.    The correctional officers at the jail did not observe any significant injuries requiring medical attention. Defendants' Appendix of Exhibits in Support of its Response for Summary Judgment ("Phares Exhibits") (#161), Exhibit No. 5 (Simpson affidavit) at ¶4-5.

16.    Photographs were taken of Davis'left and right sides of his face when he was booked and Davis agreed that the photographs accurately reflected his condition at the time.  First Davis dep. at 51-52.

17.    Davis was seen and evaluated by medical personnel at the jail as needed. Phares Exhibits, Exhibit No. 5 (Simpson affidavit ) at ¶4-10, Exhibit No. 6 (Naour affidavit) at 7-9, 12, 15-18.  Davis was seen by Dr. Inoue and nurse Mary Copenhaver at the jail on March 17, 2004.  Dr. Inoue told Davis that the jaw did not appear to be a serious issue and tried to convince Davis that there was nothing wrong.  Second Davis dep. (Exhibit M) at 17-18.  Dr. Inoue indicated that the jaw looked normal to him.  First Davis dep. at 86.  Davis insisted that his jaw be x-rayed for fractures.  *Id.*  Dr. Inoue ordered an x-ray, which was taken the same day. First Davis dep. at 84, 87; Copenhaver dep. at 13-17.  The x-ray was negative for a fracture.  Copenhaver dep. at 16; First Davis dep. at 84; Inoue aff. at ¶9-10.

18.    When Davis was booked in at the jail, the McLean County Field Arrest Report indicated: "Medical Attention: Yes"and "Medical Comment: None stated. Minor cuts on left side of face."  Plaintiff's Reply to Defendants Hirsch, Arnold and Ziemer's Response to Motion

for Summary Judgment (#183) at Exhibit 10.

19. The photographs of Davis taken on the night he was arrested do not show any significant injuries which would require medical attention.  Copies of the photographs were attached as Exhibits G (photo of "fat lip"), H (right side) and I (left side) to Defendants' Response to Davis' Motion for Summary Judgment (#170).  Davis agreed that the photographs accurately reflect his condition. Second Davis dep. at 51-52.

20. Davis was transferred to the Illinois Department of Corrections on March 24, 2004. Second Davis dep. at 23. He was taken to Stateville Correctional Center for two weeks before being transferred to Danville Correctional Center. Second Davis dep. at 9-10.  He was seen by the intake doctors at Stateville. Second Davis dep. at 25-26.  During the two weeks he was at Stateville, the facility did not find it necessary to provide any medical care for his jaw other than providing aspirin or Tylenol.  Second Davis dep. at 9-10.

21. Davis was seen by Dr. Escobar on April 2, 2004 and surgical repair of a fractured zygomatic arch in his jaw was performed on April 8, 2004. Escobar dep. (Exhibit N) at 4-5, 9.

22. Dr. Escobar opined that the injury he treated was at least six weeks old (Escobar dep. at 16-17), meaning that the injury was sustained on or before February 25, 2004 –at least six weeks prior to the date of surgery and at least two weeks prior to his arrest. Dr. Escobar testified:

> Q. Okay. And in an adult how long would it take for the fracture to have reached a level that it had healed, and what are the parameters in terms of the number of weeks in order for healing to have taken place to a level which would cause you to rebreak it?
> A. It's hard to tell, you know. That's difficult. It depends on the patient, but usually it's six weeks.
> Q. Six weeks?
> A. (nodding)
> Q. So is it more likely than not that this fracture, at the time you saw it and operated on it, would be *about* six weeks old?
> A. I don't know that.
> Escobar dep. at 7-8 (emphasis added)
> Q. And after observing the fracture during surgery, I understand it's still your position that you can't give us an opinion regarding the age of the original injury.
> A. It was healed, according to the records.
> Q. Does the fact that it was healed mean that it was at least six weeks old?
> A. A fracture is considered healed after six weeks.
> Q. Okay. So does that indicate to us then that the injury that you did surgery on was *at least* six weeks old?
> A. Most likely.
> Escobar dep. at 16-17 (emphasis added).

23. Dr. Escobar told Davis "he couldn't hardly fix it because it had healed..." First Davis dep. at 102. Dr. Escobar told him that "he couldn't actually fix it back the way it was to

normal because it had healed. It had been too long." First Davis dep. at 103.

24.    There is no medical evidence to support Davis' contention that his jaw was broken
       initially on March 9, 2004.  No doctor or other healthcare provider has given testimony to
       support that proposition.

25.    The zygomatic arch, where Davis' fracture was located, is between the eye and the ear.
       Escobar dep. at 18.

26.    Summary judgment was granted in favor of Officers Hirsch, Arnold and Ziemer and
       against Davis after this court found that excessive force was not used during Davis' arrest
       and that the officers were not deliberately indifferent to Davis' medical needs. (See
       court's order of March 27, 2007 [253].)

### Conclusion of Law

The City of Bloomington is entitled to judgment because no violation of Davis'
constitutional rights occurred during his arrest by the city officers.  The court has already held
that the Bloomington police officers did not violate Plaintiff's rights. See the court's Order of
March 30, 2007 [253] at 7-8. This ruling is the law of the case, and Plaintiff has not provided the
court with any basis on which the court should alter that ruling.  Liability attaches to a
municipality if 1) an express policy caused the constitutional deprivation .... *Billings v. Madison
Metropolitan School Dist.*, 259 F.3d 807, 816 (7th Cir. 2001), *citing McCormick v. City of
Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).  A municipality such as the City of Bloomington can
be liable only if it has a custom or policy which causes a constitutional violation.  An underlying
constitutional violation by a municipal employee is a necessary predicate to municipal liability.
If there is no constitutional violation, there is no cause of action against the municipality,
regardless of its custom or policy.  *Contreras v. City of Chicago*, 119 F.3d 1286, 1294 (7th Cir.
1997) (noting that court must find a constitutional violation before it needs to consider municipal
liability for the violation); *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) (finding
that city could not be liable where officers did not violate plaintiff's constitutional rights).
Because Bloomington's officers did not violate Plaintiff's rights, there can be no cause of action
under §1983 against the City of Bloomington. Plaintiff's claim against the City was brought
solely pursuant to 42 U.S.C. §1983, so this ruling is fatal to all of Plaintiff's claims.

In the present case, this court specifically found that the officers employed by the City of
Bloomington did not violate Davis' constitutional rights during his arrest. (March 27, 2007 order
at 7,8).  In determining whether the officers were entitled to summary judgment, this court found
that "[a]s the injury that Davis claims he suffered (a fractured zygomatic arch) was not caused by
the officers during his arrest, his claims for both excessive force and failure to provide medical
care fail." (Order at 6).  This Court further found that the force used during Davis' arrest "was
commensurate with the threat posed," and that "the officers were not deliberately indifferent to a
serious medical need." (Order at 7). Summary judgment was therefore entered in favor of the
officers. (Order at 8). Accordingly, because it has already been determined that the officers did
not violate Davis' constitutional rights during his arrest, the City of Bloomington cannot be liable
to Davis and is entitled to summary judgment.

Further, the City of Bloomington is entitled to judgment because there is no evidence of any unconstitutional custom or policy adopted or followed by the City.  To state any cause of action at all against a municipality under § 1983, Davis must plead and prove that his injury resulted from an "official custom or policy" of the municipality.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Henry v. Farmers City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986).  There is no evidence in the present case of any unconstitutional custom or policy adopted or followed by the City of Bloomington.  Rather, the facts disclose only a single incident –Davis'arrest.  No evidence of a formal or informal official policy has been disclosed, nor is there evidence that would demonstrate the existence of an official policy of the City of Bloomington.  Davis' allegations are similar to those of Henry, where the plaintiff attempted to impose liability  upon the city based upon the single warrantless seizure of their business property.  The Seventh Circuit described an "official policy or custom" in Henry as follows:
To the extent that the Henrys seeks to impose liability under § 1983 on the City in its own right, they must prove that the constitutional deprivation was caused by an official municipal policy or custom. To establish a municipal policy or custom, the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident in which the plaintiff suffered a deprivation will not suffice.  The amended complaint alleges only one unconstitutional act committed by the City and fails to include even a general allegation that this act was in furtherance of an official municipal policy or custom.  The § 1983 claim against the City was properly dismissed. *Henry*, 808 F.2d at 1237 (citations omitted) (emphasis added).

It is insufficient for Davis "merely to identify a conduct properly attributable to"the City of Bloom ington.  *Bd. Comm'rs. BryanCounty, Okla. v.Brown*, 117 S.Ct. 1382, 1388 (1997).  Rather, Davis is required to show "that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  *Id*. (emphasis added).  In the Bryan County case, the Supreme Court held that the plaintiff could not maintain an official capacity case against a county sheriff who hired his nephew as a deputy.  The nephew had a checkered past and allegedly used excessive force in arresting the plaintiff. The county stipulated that the sheriff was the policymaker for Bryan County.  *Id*. at 1387.  Even though the sheriff was admittedly a policymaker for the county, the court held that the plaintiff could not maintain an official capacity suit based on a single bad hiring decision.  *Id*.  The Seventh Circuit discussed the issue in another case as follows:

> "Policy"has a normative as well as a positive dimension.  That an agent of the municipality did something tells us the positive side, the "is"of public action; to discern the city's policy, we also need to know the "ought" of its action.  Unless today's decision ought to govern tomorrow's case under a law or custom with the force of law, it cannot be said to carry out the municipality's policy . . . Liability for unauthorized acts is personal; to hold the municipality liable, Monell tells us, the agent's action must implement rather than frustrate the government's policy.

7

Auriemma v. Rice, 957 F.2d 397, 400 (7th Cir. 1992).

Davis has produced no evidence that Officers Hirsch, Arnold and Ziemer were implementing an official custom or policy against him.  "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." Id. at 1389.

Where a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high.  Because the decision necessarily governs a single case, there can be no notice to the municipal decision maker, based on previous violations of federally protected rights, that his approach is inadequate.  Nor will it be readily apparent that the municipality's action caused the injury in question, because the plaintiff can point to no other incident tending to make it more likely that the plaintiff's own injury flows from the municipality's action, rather than from some other intervening cause. Id. at 408-09.

Davis makes claims based on alleged violations of his civil rights, including that the officers used excessive force during his arrest, that they were deliberately indifferent to his health and safety, and that they failed to provide him with medical care for his serious medical needs. However, there is no evidence of an unconstitutional custom or policy with respect to any of these claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The City of Bloomington is therefore entitled to summary judgment.

In his response, the plaintiff cites state law and argues that the City owed a duty to perform the "ministerial act" of providing him with medical care. The distinction between "ministerial" and "discretionary" acts is not relevant to any of the issues before the Court.  The questions are whether police officers used excessive force and whether they were deliberately indifferent to a serious medical need.  If so, the officers violated Plaintiff's constitutional rights. If not, there was no violation. The distinction between ministerial and discretionary acts is relevant to common law public official immunity. This immunity would apply to state law claims, but is not relevant here. See, Michigan Ave. Nat'l. Bank v. County of Cook, 191 Ill.2d 493, 520-521, 732 N.E.2d 528, 543-544 (2000) (discussing ministerial versus discretionary acts in public official immunity and distinguishing application of the Tort Immunity Act).  Moreover, the plaintiff cites no statute or case law supporting the proposition that the provision of medical care is a ministerial act. Deciding whether a person needs medical care requires the exercise of discretion.  If officers were required to take every arrestee who asked for medical care to the hospital, it would result in chaos.  Every arrestee would claim some minor injury and demand that they be taken to the hospital.  Obviously, officers must have discretion to determine whether

there is a legitimate complaint that needs to be evaluated by a medical professional.  Plaintiff's argument fails on that basis as well.

The plaintiff also claims that his rights were violated because the City of Bloomington maintains a policy which allows police officers to exercise medical judgment. This argument is

moot, as the Court has already found that there was no constitutional violation. The Court therefore does not need to reach the question of whether there was an unconstitutional custom or policy.  Moreover, Plaintiff has not provided any evidence of an unconstitutional custom or policy.  He cites only his own situation, which is insufficient to prove a custom or policy.  *See, Henry v. Farmers City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). He does not point to any written or formal policies of the City.  There is no evidence from which the Court could find that there was an unconstitutional custom or policy.  As indicated above, officers must have some discretion in determining when to seek medical care for an arrestee.  If they were not imbued with some discretion, every arrestee would demand to be taken to the hospital, and officers would be forced to oblige their every request.  The law does not require this.  The Constitution only requires that officers not be "deliberately indifferent" to the "serious medical needs" of an arrestee.  *Chavez v. Cady*, 207 F.3d 901, 904 (7th Cir. 2000).  That minimal requirement leaves ample room for officers to exercise some discretion in determining whether an arrestee has a legitimate complaint and needs to be evaluated by a medical professional or can be taken directly to the county jail, as Plaintiff was. The fact that the officers exercised such judgment is not evidence of an unconstitutional policy, nor did it lead to a violation of Plaintiff's constitutional rights.

It is possible for individuals who supervise other officers to be liable under §1983 based upon their supervisory activity. See, e.g., Chavez v. Illinois State Police, 251 F.3d 612, 651-653 (7th Cir. 2001) (discussing potential liability of individual supervisors); Moore v. Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993) ("a valid § 1983 claim for damages against a state supervisory official ... requires a showing of direct responsibility for the improper action.  In other words, an individual cannot be held liable ... unless he caused or participated in an alleged constitutional deprivation.")(citation and punctuation omitted, emphasis in original).  However, that theory does not apply to a municipality such as the City of Bloomington.  The City can be held liable only if it has an unconstitutional customor policy which causes the deprivation of an individual's constitutional rights.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Bd. Comm'rs. Bryan County, Okla. v. Brown*, 117 S.Ct. 1382, 1388 (1997).  The concept of supervisory liability has no application to the City.  A city is not an individual and cannot be a "supervisor."  It can be liable only if it has a custom or policy that is the moving force causing a violation of the plaintiff's constitutional rights.  There is no evidence of such a custom or policy here.

The court has already determined that the Bloomington police officers did not violate the plaintiff's constitutional rights.  That decision is the law of the case.  In the absence of a constitutional violation, the City of Bloomington cannot be liable and is entitled to summary judgment.

It is therefore ordered:

1.      The defendant, City of Bloomington's motion for summary judgment is granted [255].
        The clerk of the court is directed to enter judgment in favor of the defendant and against

the plaintiff at the close of this case.

2.    If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this   18th   day of January 2008.

**s\Harold A. Baker**
_____
Harold A. Baker
United States District Judge