**E-FILED**
Friday, 26 September, 2008 02:29:05 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

**JEFFERY T. DAVIS,**
**Plaintiff,**

**vs.** **05-1238**

**DAVID OWENS ET AL.,**
**Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the court is the Defendants' unopposed[1] summary judgment motion [285] filed pursuant to Rule 56 of the Federal Code of Civil Procedure and CDIL-LR 7-1(D)(1), on the grounds that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.

**Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by

---

[1] On August 27, 2008, as the plaintiff's response was not in compliance with U.S.D.C. L. R. 7.1(D), the plaintiff's response was strickened. He was allowed 21 days to file a response that complied with Fed. R. Civ. Pro. Rule 56(e) and U.S.D.C. L.R. 7.1(D). Further, the clerk of the court mailed a coy of U.S.D.C. Local Rule 7.1 to the plaintiff, along with the order. Although it is well past the deadline, the plaintiff has not mailed an amended response, nor has he filed a motion for extension of time to file an amended response. Therefore, the defendants' summary judgment motion is unopposed.

"set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

**Background**

On March 27, 2006, Davis filed an amended complaint in Case No. 06-1047 which was subsequently consolidated with this case by the court on April 7, 2006. The amended complaint in 06-1047, inadvertently, was not filed in 05-1238 until August 10, 2006. Davis' claims in his amended complaint arise out of his detention in the McLean County Detention Facility (hereinafter referred to as "Jail") in February 2005. In its Order dated November 2, 2007, the court reinstated the defendants, McLean County, David Owens, Thomas Phares, Greg Allen, Jamey Kessinger, Melinda Fellner, Kenneth Pacha, Patricia Peifer and Joseph Schapmire, only for the claims that (1) that the defendants subjected Davis to unreasonable use of force out of retaliation for his "attempt" to file a civil rights lawsuit against McLean County and (2) that defendants subjected Davis to unsanitary conditions of confinement out of retaliation because of allegedly placing him in a holding cell completely contaminated with human waste…for a period of approximately eight hours.

In his amended complaint, Davis alleges that on or about February 14, 2005, correctional staff of the Jail did use unreasonable and unnecessary force upon the plaintiff; without legal justification, by spraying the plaintiff about the head and shoulders with pepper foam in retaliation for plaintiff's attempting to file a civil rights suit against McLean County and the jail staff. (Am. Complaint, p.5). Davis also alleges that he was unnecessarily handcuffed behind his back…unnecessarily strapped into a restraint chair for a period of 2 hours with pepper foam in his eyes. (Am. Complaint, p. 6). He further alleges that he was forced to enter and remain inside a holding cell that was completely contaminated with human waste and excrement and for a period of approximately 8 hours. (Am. Complaint, p. 6). Davis alleges that these purported retaliatory actions were sanctioned by the policy making and/or condoned by the policy making authority of McLean County and/or its Sheriff. (Am. Complaint p. 5-6).

The Defendants assert that Davis' allegations are not supported by any evidence including deposition testimony, affidavits or any other documentary evidence in this case. Defendants further assert that summary judgment in favor of defendants, McLean County, David

Owens, Thomas Phares, Greg Allen, Jamey Kessinger, Melinda Fellner, Kenneth Pacha, Patricia Peifer and Joseph Schapmire, is appropriate because Davis has failed to provide and cannot produce any evidence that the defendants retaliated in any way against him for "attempting" to file a civil rights complaint. Further, the Defendants contend that the undisputed evidence demonstrates that (1) Davis was not subjected to inhumane conditions of confinement during his detention in Jail, (2) the use of force against Davis was not in retaliation, but rather in response to safety concerns due to his aggressive behavior, (3) Davis has failed to come forward with the necessary evidence establishing the personal responsibility of defendants for the alleged violations of his constitutional rights, and (4) Davis has failed to come forward with the necessary evidence establishing that an official policy, custom or policy maker sanctioned the allegedly retaliatory conduct.

**Statement of Material Undisputed Facts[2]**

1. Plaintiff Jeffery Davis was a detainee at the Jail during the relevant time period. (Schapmire Aff. ¶3).
2. Defendant David Owens was the elected Sheriff of McLean County in February 2005. In his position, Owens would not have regular contact with detainees. (Owens Aff. ¶ 4). Owens had no personal knowledge of the incidents on February 14, 2005 and February 15, 2005 and did not have knowledge of Davis' intention to file a lawsuit against McLean County. (Owens Aff. 5,6,7).
3. Defendant Thomas Phares was the Jail Superintendent of the Jail in February 2005. In his position, Phares would not have regular contact with detainees. (Phares Aff. ¶1,4). Phares had no personal knowledge of the incidents on February 14, 2005 and February 15, 2005. (Phares Aff. ¶7, 16, 17).
4. Defendant Greg Allen was the jail operations supervisor in the Jail in February 2005. In that position, Allen did not have regular contact with detainees. (Allen Aff. ¶ 1,4). Allen had no personal knowledge of the incidents on February 14, 2005 and February 15, 2005 and did not have knowledge of Davis' intention to file a lawsuit against McLean County. (Allen Aff. ¶ 7,10,15,16,17).
5. Defendant Jamey Kessinger was the jail operations supervisor in the Jail in February 2005. In that position, I did not have regular contact with the detainees. (Kessinger Aff. ¶1, 4) Kessinger had no personal knowledge of the incidents on February 14, 2005 and February 15, 2005. (Kessinger ¶6,9, 14, 15, 16)
6. Kenneth Pacha is a correctional officer in the Jail and is employed by the McLean County Sheriff. (Pacha Aff. ¶1). Pacha has the rank of sergeant. (Pacha Aff. ¶1). Sergeant Pacha was a supervisor on the second shift at the Jail in February 2005. (Pacha Aff. ¶1). As a supervisor, Sgt. Pacha did not have regular contact with prisoners. (Pacha

[2] The record materials cited herein are contained in the Defts' Appendix [286]. Citations to those materials are abbreviated as follows: Affidavits (Owens Aff. ¶, Phares Aff., Kessinger Aff. Allen Aff. Fellner Aff. Peifer Aff. Pacha Aff., Schapmire Aff.); Exhibits 8-19 (Ex. ___).

Aff. ¶4). Generally, Sgt. Pacha had contact with a prisoner only when he was contacted by a correctional officer who requested assistance with a problem. (Pacha Aff. ¶4).

7. Joseph Schapmire is a correctional officer in the Jail and is employed by the McLean County Sheriff. (Schapmire Aff. ¶1). Officer Schapmire was an officer on the second shift at the Jail in February 2005. (Schapmire Aff. ¶1).

8. Melinda Fellner is an Inmate Assessment Specilist in the Jail and was in that position in January 2005 and February 2005. (Fellner Aff. 1). Fellner had no personal knowledge of the events on February 14, 2005 and February 15, 2005. (Fellner Aff. ¶5,6).

9. Patricia Peifer is a correctional officer in the Jail and is employed by the McLean County Sheriff. Peifer has the rank of sergeant. Sergeant Peifer was the supervisor on the third shift at the Jail in February 2005. Peifer had no personal knowledge of the events that transpired on February 14, 2005 as to Davis and had no indication on either February 14, 2005 and/or February 15, 2005 that Davis intended to file a lawsuit against McLean County. (Peifer Aff. ¶1, 10, 11).

10. On January 12, 2005, Davis was booked into the Jail where he remained as a detainee until on or around May 16, 2005. (Ex. 19).

11. On January 24, 2005 Davis directed an Inmate Request Form to Melinda Fellner stating, inter alia, that he intended to file a 1983 civil rights lawsuit against any and everyone involved in apparently his placement in segregation. Fellner responded to said Inmate Request Form noting that Davis requested to remain in that cell. (Fellner Aff. ¶10, Ex. 13).

12. On January 25, 2005 Davis directed another Inmate Request Form to Melinda Fellner requesting the address for the United States District Court for the Central District of Illinois. Fellner responded to said Inmate Request Form the same day providing Davis with the address for the United States District Court for the Central District of Illinois. (Fellner Aff. ¶10, Ex.14).

13. On February 12, 2005 Davis was cited for 2 major rule violations. On that date, Davis was cited for violation of Major #9 for causing or being involved in a disturbance, work stoppage, or riot for his constant banging based on his constant banging on his door. Davis was also cited for violation of Major #15 for threatening, intimidating, extortion or blackmailing for protection or any other reason, of any employee, inmate or other persons based on his threatening other inmates and staff. (Ex. 18 and Phares Aff. ¶22, 23).

14. On February 14, 2005 Davis was housed in Male Intox cell. (Ex. 19 and Schapmire Aff. ¶ 3, Pacha Aff. ¶4). On February 14, 2005 around 3 p.m. Sergeant Pacha came on duty. Upon beginning his shift, Sergeant Pacha was informed by Officer McCormick that Davis had been banging on the cell door demanding a phone call and to speak with the sergeant. Sergeant Pacha directed Officer McCormick to make a copy of the telephone policy, wrote a note to Davis on the copy that the banging would not do him any good, and directed Officer McCormick to delivery the copy to Davis. (Pacha Aff. ¶5,6; Ex. 16).

15. A short time later, the frequency and intensity of Davis' banging on the door increased. Sergeant Pacha became concerned that Davis would break his hand and/or foot as a result of his banging on the door. Sergeant Pacha requested assistance at this point from Officer Beck, Officer McCormick and Officer Schapmire. He directed Officer

Schapmire to bring the Oleoresin Capsicum "pepper foam". Pacha Aff. ¶7,8 and Schapmire Aff. ¶4,5, Ex. 15, Ex. 16).

16. Sergeant Pacha briefed the other officers on the plan of dealing with Davis' aggressive behavior. Pacha advised the officers that they would remove Davis from his cell and restrain him without physical confrontation, if possible, because of the fear that Davis was going to harm himself. The plan was to verbally inform Davis of what was expected of him. If Davis failed to comply, Officer McCormick was assigned to operate the keys, Officer Schapmire was to enter and spray Davis with the pepper foam and then Officer Beck and Pacha would go in and restrain him. (Pacha Aff. ¶9 and Schapmire ¶5; Ex. 15, Ex. 16).

17. Sergeant Pacha and the officers verbally advised Davis that they intended to enter the cell and retrain him for fear that he was going to harm himself. Davis again tried to discuss using the phone. Pacha verbally instructed Davis to turn around, kneel on the bed and to place his hands behind his back. Davis attempted to argue. Pacha repeated the instructions and told Davis that if he failed to comply, the officers would enter the cell and take him down. (Pacha Aff. ¶10, Schapmire Aff. ¶6-7, Ex. 15, Ex. 16).

18. Davis refused to comply. Sergeant Pacha, Officer McCormick, Officer Beck and Officer Schapmire entered Davis' cell. Because of Davis' aggressive behavior and for officer safety, Officer Schapmire released a short burst of pepper foam to Davis, hitting him in the neck and right ear area. (Pacha Aff. ¶11, Schapmire Aff. ¶ 7,8,9; Ex. 15, Ex. 16).

19. Davis was then handcuffed and legirons were applied. (Pacha Aff. ¶12, Ex. 16). He was brought to his feet to be escorted out of the cell. Davis became argumentative with the officers telling them not to touch him. Davis threatened us that we would be dealt with for our actions. While en route to booking, Pacha offered to rinse Davis' face with water on three occasions and/or offer a shower to him to which Davis refused. (Pacha Aff. ¶12,13, Schapmire Aff. ¶10, Ex. 15, Ex. 16).

20. At approximately 3:45 p.m. on February 14, 2005, Davis was secured in the restraint chair. At this time, Sergeant Pacha again offered to rinse Davis' face with water. Davis again refused. (Schapmire Aff. ¶11, Ex. 15).

21. At approximately 4 p.m. on February 14, 2005, Officer Schapmire rinsed Davis' eyes and face with water and a wet towel and gave him a glass of water. (Schapmire Aff. ¶11 and Ex. 15) Pacha called the medical staff to check on Davis' circulation and to irrigate any pepper foam that may have reached his eyes per McLean County policy. (Ex. 9, Ex. 11, Pacha Aff. ¶14). Pacha then called Inmate Services to request someone to talk to Davis because of his self destructive behavior. At approximately 5:08 p.m. on February 14, 2005 Davis was allowed to shower and was placed in Booking Cell #5. (Pacha Aff. ¶14, Schapmire Aff. ¶13, Ex. 15 and Ex. 16).

22. Officer Schapmire had no knowledge of Davis' intention of filing a civil rights lawsuit against McLean County of the jail staff on or before February 14, 2005. (Schapmire Aff. ¶22) Neither Schapmire or Pacha had knowledge of the Davis' complaints about his cell conditions made on February 15, 2005. (Schapmire Aff. ¶17, 18, 19, 20 and Pacha Aff. ¶19, 20, 21, 22).

23. At approximately 12:20 AM on February 15, 2005, Patricia Peifer, third shift acting sergeant, was advised by Officer Daughery that Davis was requesting to see Crisis.

Officer Arbuckle and Peifer responded to Davis' request and spoke to him in booking. (Peifer Aff. ¶ 4 and Ex. 17).

24. Davis informed Peifer that he wanted to be moved from his current cell because he stated his cell smelled of "piss". (Peifer Aff. ¶ 5 and Ex. 17). Davis was immediately moved from his current cell to another cell by me, Officer Arbuckle, Officer Daughery and Officer Vasquez. (Peifer Aff. ¶ 5, Ex. 17 and Ex. 19).

25. While the officers were moving Davis, he once again asked to see Crisis. Peifer asked Davis why he wanted to see Crisis and he stated he would tell Crisis when they got there. I heard Officer Arbuckle ask Davis if he was having suicidal thoughts to which Davis responded he would not "kill his mother fucking self". (Peifer Aff. ¶ 7 and Ex. 17).

26. On February 15, 2005 at approximately 12:35 AM, Peifer contacted Crisis on Jeffery Davis' behalf. At approximately 12:47 AM on February 15, 2005, Jennifer from Crisis did call back and Peifer informed her what was going on with Davis. Peifer did not feel that Crisis needed to come recognizing that Peifer would call Crisis back if she felt it necessary in the near future. (Peifer Aff. ¶ 8 and Ex. 17).

27. The policy of McLean County is to maintain sanitary cells throughout the jail. The experience of Jail personnel during 2005, including Peifer, Pacha, Schampire and Phares, was that the cells were maintained in a sanitary condition. (Peifer Aff. ¶12, Schapmire Aff. ¶21, Pacha Aff. ¶23, Phares ¶19).

28. Approval by Greg Allen and/or Thomas Phares would not have been necessary prior to the use of force to restrain Davis on February 14, 2005. (Allen Aff. ¶ 14, Phares Aff. ¶14).

29. Sergeant Pacha and Officer Schapmire responded appropriately to the situation pursuant to McLean County policies. (Phares Aff. ¶13, Allen Aff. ¶13, Kessinger Aff. ¶12, Ex. 9, Ex. 10, Ex. 11).

30. McLean County Detention Facility personnel are trained in the area of inmate rights and were during February 2005. (Ex. 12).

**Discussion and Conclusion**

In order to plead and prove a claim under 42 U.S.C. §1983, a plaintiff must establish that a defendant deprived him of a right secured by the Constitution or the laws of the United States and that the defendant acted under color of state law. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). It is essential for liability that a defendant be personally responsible for the deprivation of a constitutional or statutory right. *Gentry v. Duckworth*, 65 F.3d 555, 561(7th Cir. 1995). An official cannot be personally responsible under a theory of respondeat superior. *Gentry* at 561 *citing Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). However, "[a]n official satisfies the personal responsibility requirement of section 1983…if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge or consent." *Id. citing Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (*quoting Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). "That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye…" *Id. citing Jones*, 856 F.2d at 992. In addition, the plaintiff must establish that a constitutional violation by each defendant caused him injury. *Walker v. Peters*, 223 F.3d 494, 502 (7th Cir. 2000); *Papapetropoulous v. Milwaukee Transport*

*Services, Inc*., 795 F.2d 591, 595 (7th Cir. 1986)("a causal connection must exist between the defendant's actions and the injury resulting from the constitutional violation").

The courts distinguish a pretrial detainee, such as Davis, from a convicted prisoner. The rights of a pretrial detainee are derived from the due process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996). The rights of a convicted prisoner arise from the Eighth Amendment prohibition of cruel and unusual punishment. *Id*. The Eighth Amendment protections are extended to pretrial detainees through the Fourteenth Amendment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Although a pretrial detainee may not be punished prior to a determination of guilt, he may be subject to confinement and the disabilities necessary to such confinement, such as loss of privacy and freedom of choice. *Bell*, 441 U.S. at 537. The government has a legitimate interest in effective management of the detention facility which justifies the imposition of conditions and restrictions on the detainee. *Bell*, 441 U.S. at 540. The government must be able to take steps to maintain security and order in the facility. *Id*. Further, no process is required if he is placed in segregation not as punishment but for managerial reasons" such as lack of space, suicide risk, protection from other inmates or to protect jail staff from the pretrial detainee. *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002)(citations omitted) When a pretrial detainee challenges a disability imposed on him during confinement, the court must decide whether the disability is imposed for the purpose of punishment or whether it is an incident of some legitimate governmental purpose other than punishment. *Id*. at 538. "Imposing sanctions on a particular detainee for misconduct which occurred while incarcerated falls under the legitimate governmental purpose of maintaining security and safety within the prison." *Winfrey v. Del Re*, 1998 WL 460276 * 5 (N.D.Ill. 1998) *citing Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct.1861, 60 L.Ed.2d 447 (1979).

To state a cause of action against a municipality under §1983, a plaintiff must plead and prove that his injury resulted from an "official custom or policy" of the municipality. *Monnell v. Department of Social Services*, 436 U.S. 658 (1978). To establish a municipal policy or custom, a plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident in which plaintiff suffered a deprivation will not suffice. *Doe v. Bobbitt*, 665 F. Supp. 691, 694 (N.D. Ill. 1987) *citing Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986).

In the case of supervisory officials, deliberate indifference requires a showing of direct responsibility for improper conduct; the official must have caused or participated in the alleged constitutional deprivation. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). Such responsibility means that the unconstitutional conduct occurred either at the direction of the supervisory official or with his knowledge and approval. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997); *Gentry*, 65 F.3d at 561. Thus, a plaintiff must present facts demonstrating the supervisor's personal involvement in the allegedly unconstitutional activities. *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002); *Jenkins v. Velasco*, 1995 WL 765315, *8 (N.D.Ill.); *Perez v. Lane*, 794 F.Supp. 286, 289 (C.D.Ill. 1992).

There court finds there is no genuine issue of material fact that the Defendants retaliated against the Plaintiff in utilizing force and/or by his conditions of confinement. Davis has failed to present any evidence that any of the defendants violated his civil rights pursuant to 42 U.S.C. §1983. It is undisputed that Davis received 2 major rule violations on February 12, 2005 for similar behavior as he exhibited on February 14, 2005. On February 14, 2005, it is undisputed that Davis was acting in an aggressive fashion by banging his hands and feet on the cell door. In fact, Davis was banging his hands and feet with such frequency and intensity that Sgt. Pacha feared that Davis would injure himself. The evidence demonstrates that Pacha and Schapmire, along with Officer Beck and Officer McCormick, took reasonable steps in order to protect Davis from injuring himself and from injuring the jail staff on February 14, 2005 at approximately 3:00 p.m. Davis was provided with at least two verbal warnings and was told to turn with his back to the door, kneel on his bed and put his hands behind his back. Davis continued to argue at which point the instructions were given to him again. Davis was provided numerous opportunities to comply with Sgt. Pacha's instructions before the officers entered his cell and used pepper foam to restrain him. The facts demonstrate that after Davis was handcuffed, leg irons were applied and he was removed from his cell, he continued to argue with the officers. He was provided numerous opportunities to flush out his eyes or take a shower to remove the pepper foam immediately after the occurrence to which he refused. At 3:45 p.m., Davis was placed in the restraint chair at which time Sgt. Pacha again offered to rinse Davis face with water. Davis again refused. At approximately 4 p.m., on February 14, 2005, Officer Schapmire rinsed Davis' eyes and face with water and a wet towel and gave him a glass of water. Pacha then called the medical staff to check on Davis' circulation and to irrigate any pepper foam that may have reached his eyes per McLean County policy. Pacha called Inmate Services to request someone to talk to Davis because of his self destructive behavior. At approximately 5:08 p.m., on February 14, 2005 Davis was allowed to shower and was placed in Booking Cell #5.

The government has a legitimate interest in effective management of the detention facility which justifies the imposition of conditions and restrictions on the detainee. *Bell*, 441 U.S. at 540. Imposing sanctions on a particular detainee for misconduct which occurred while incarcerated falls under the legitimate governmental purpose of maintaining security and safety within the prison. The evidence demonstrates that Sgt. Pacha and Officer Schapmire only restrained Davis to maintain security and safety within the jail. The facts demonstrate that Davis, 2 days prior, had exhibited aggressive behavior towards the jail staff and other inmates. The facts further demonstrate that Davis was at risk of harming himself by banging incessantly on the cell door with both his hands and feet. The actions taken by Sgt. Pacha and Officer Schapmire, along with the other two officers, were taken to maintain security and safety in the jail rather than to punish. The entire incident was resolved in approximately 2 hours.

The facts demonstrate that Davis was assigned to a booking cell after the incident occurred on February 14, 2005. On February 15, 2005 at 12:20 AM, Peifer was told that Davis was requesting to see Crisis and to be moved from his cell because he claimed it smelled like urine. It is uncontested that Davis was immediately moved to a different cell upon his first request. Peifer had no knowledge of the incident that occurred on February 14, 2005 or that Davis had threatened to file a lawsuit.

There are no facts that show Tom Phares, Greg Allen, Melinda Fellner and Jamey Kessinger were personally involved in any of the alleged misconduct. Davis' civil rights claim t fail as to Phares, Allen, Fellner and Kessinger as he fails to allege any specific act or conduct on their part and the complaint is silent as to the above referenced defendants except for their names appearing in the caption. In a civil rights retaliation claim, 42 U.S.C. §1983 requires a plaintiff to show that "(1) an action taken under color of law (2) which violates his federal constitutional rights." 2008 WL 509466 * 4 (S.D.Ill. 2008) *citing Cunningham v. Southlake Ctr. for Mental Health, Inc*., 924 F.2d 106, 107 (7th Cir. 1991). An individual cannot be held liable in a Section 1983 action unless he caused or participated in an alleged constitutional deprivation. *Id*. "Moreover, where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Id. citing Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). Davis has failed to allege any specific conduct on the part of Allen, Phares, Kessinger and Fellner in his amended complaint. Davis appears to name Allen, Phares, Kessinger and Fellner in the caption of his amended complaint as defendants, but has come forward with no facts or evidence implicating them in any alleged violation of his constitutional rights. The necessary evidence of personal responsibility is lacking. *Boyce*, 314 F.3d at 889; Gossmeyer, 128 F.3d at 495. It is uncontested that Allen, Phares, Kessinger and Fellner had no personal knowledge of the incidents that occurred on February 14, 2005 and February 15, 2005.

Further, the plaintiff has presented no facts or evidence of any unconstitutional custom policy adopted or followed by Owens and McClean County. In order to prevail on an official capacity claim under Section 1983, Davis must show that an official policy or custom caused the injury. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) *citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988). Davis has not produced any evidence that an official policy or custom of McLean County and/or Sheriff Owens caused the harm that he allegedly suffered. There are no facts or evidence in the present case of any unconstitutional custom or policy adopted or followed by the County of McLean. Rather, the allegations only discuss an incident that occurred to Davis. The evidence also demonstrates that McLean County had, in effect, policies addressing the use of force, use of pepper foam and inmate rights.

The facts do not establish supervisory responsibility for the alleged constitutional violations as to Owens, Phares, Allen and Kessinger. Davis names Sheriff Owens, Phares, Allen and Kessinger, supervisors and/or administrative officials, as defendants, but has not come forward with any facts or evidence that implicate them in any alleged violation of his constitutional rights. In the case of these defendants, plaintiff must present evidence that they caused or participated in the alleged constitutional deprivation. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). Owens, Phares, Allen and Kessinger have all submitted affidavits that they had no personal knowledge of the incidents Davis complains of and would not have regular contact with the detainees in their positions.

Based on the foregoing reasons, the Defendants, McLean County, Owens, Phares,

Kessinger, Allen, Fellner, Peifer, Pacha and Schapmire are entitled to summary judgment as a matter of law.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), the Defendant's, Greg Allen, Melinda Fellner, Jamie Kessinger, McLean County Illinois, David Owens, Kenneth Pacha, Patricia Peifer, Tom Phares and Joseph Schapmire, summary judgment motion is granted [285]. The clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff. Any remaining matters are rendered moot and this case is terminated, with the parties to bear their own costs.**
2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

**Enter this 26th day of September 2008.**

**s\Harold A. Baker**

**Harold A. Baker**
**United States District Judge**